**Mary SECOOLISH, natural guardian of Eugene Secoolish, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 209–61.**

United States District Court
D. New Jersey.
May 3, 1963.

Harrison & Jacobs, by Jack B. Kirsten, Newark, N. J., for plaintiff.

David M. Satz, Jr., U. S. Atty., by Richard A. Levin, Asst. U. S. Atty., Newark, N. J., for defendant.

AUGELLI, District Judge.

This is an action under section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), brought by plaintiff Mary Secoolish, the mother and natural guardian of the claimant Eugene Secoolish, to review the final decision of the defendant Secretary of Health, Education and Welfare, denying childhood disability insurance benefits to claimant under section 202(d) of the Act, 42 U.S.C.A. § 402(d). Both sides have moved for a summary judgment.

A brief recital of the facts concerning the past and present physical and mental condition of claimant is in order. Claimant was born on September 6, 1940, mentally retarded, and with a physical deformity (pressed-in face) and compound myopic astigmatism of both eyes. As an infant, claimant suffered 3 or 4 convulsions. At the age of 1½ years, he underwent a double mastoid operation. Then followed a memory lapse and the necessity of again having to learn to walk. An operation performed on claimant when he was 9 years old corrected the deviation of one eye. Subsequent examination of the eyes revealed $19/200$ vision in the right eye and $20/200$ in the left. The sight in the right eye cannot be improved; the left eye has been brought to $20/20$ vision by the use of very thick special lenses. In school, claimant attended special classes for mentally retarded children. A Stanford Binet test made when claimant was 11½ years old, reflected a mental age of 8 years 2

months, and an I.Q. of 72. At the hearing before the Hearing Examiner on February 15, 1960, claimant, then 19½ years old, was not sworn as a witness because the Examiner was not certain claimant understood the nature of an oath.

Claimant has never been gainfully employed. On July 26, 1958, the Secretary caused claimant to be examined by Dr. Hirsch L. Silverman, a consulting psychologist. The doctor reported that claimant, then 17 years 10 months of age, was of educable mental ability, with an I.Q. of 76 and a mental age of 13 years 7 months. The claimant was found to be able to write his name, read simple words slowly and rather accurately, and also able to function in simple fundamentals of reading, writing and arithmetic. The psychological diagnosis indicated that mental retardation was due to either birth injury or prenatal brain injury, with concomitant pressures on the brain having caused mental malfunctioning. Dr. Silverman was of the opinion that claimant was seemingly capable of vocational training and recommended referral to any agency such as the Occupational Center of Essex County ("OCEC"). The doctor stated claimant was able to do light woodwork, and generally, that he may be able to function, after adequate training and personal counselling, as a "restaurant busboy, dishwasher, light factory worker, sweeper, helper on a truck, packer at factory bench, sorter, platform loader, custodian-janitor assignments, simple carpentry, and related work."

Claimant was again examined for the Secretary on November 15, 1958, by Dr. Bernard L. White, clinical psychologist. He rated claimant with an I.Q. of 72, and made no change in the mental age of 13 years 7 months established by Dr. Silverman. Dr. White stated that claimant "must be evaluated not only in terms of what he can theoretically do on the basis of his intellectual and physical level, but also in terms of previous life experiences and the degree of independence allowed him in his previous functioning." The doctor noted a lack of opportunity for independent functioning, due probably to parental overprotection. Dr. White also felt that claimant's "overall handicap is actually more severe than might be anticipated on the basis of his physical and intellectual deficit", and that although theoretically, on the basis of intellectual and physical capacity, claimant "might appear capable of employment in the service area, as a helper, or in light factory employment, * * * the chances of his actually accomplishing this level would be open to serious question." In conclusion, the doctor suggested caution in predicting claimant's work level since emotionally claimant "is not nearly as advanced as his mild level of retardation would indicate".

Another examination of claimant for the Secretary was made on December 12, 1958, this time by Dr. Irving Rosenberg, clinic psychiatrist. He was of the opinion that parental overprotection affected claimant's ability to use his capacities as fully as possible. The doctor made a clinical diagnosis of "[m]ental retardation, mild, associated with encephalopathy of unknown etiology". As to vocational classification, Dr. Rosenberg concluded claimant was "[c]apable of sheltered vocational training, without prediction as to ultimate work level which may be attained". A trial placement at OCEC was recommended.

On February 2, 1959, claimant began his program as a trainee at OCEC and continued until October 29, 1959, on which date he became an actual employee of OCEC. Progress reports at OCEC covering the period from June 15, 1959 to December 29, 1959 show regular and punctual attendance, an ability to perform simple tasks adequately, an ability to follow simple instructions, and an ability to do light bench assembly work quite easily, provided the operations involved in this activity remain uncomplicated. The reports also show that claimant is well liked and mixes well with others, that he is suggestive to influences from more forceful personalities,

that he is receptive to supervision and appears to be satisfied with his work assignments, that he is making a satisfactory adjustment to sheltered environment, and that his mental retardation does not enable him to do complex tasks or follow complicated assignments. The last OCEC report on claimant, appearing in the record, states that until claimant "is able to increase his quantity and quality, OCEC feels that there is little likelihood of his being employed in competition (sic) industry". The OCEC recommendation is that claimant "be retained in sheltered employment in the area of light bench assembly work". The decision was then made, on December 29, 1959, to permit claimant to remain at OCEC until employment is secured in the community.

Under date of September 15, 1960 OCEC reported that, from October 29, 1959 to September 9, 1960, claimant earned a gross total of $438.94. The report also stated that claimant is paid on a piece-work basis, that his daily hours are from 9 A.M. to 4:30 P.M., and that claimant is able to do any type of work which OCEC provides. Claimant's Workshop Supervisor felt claimant's "production rate would be considered approximately 1/3 of the production of a non-handicapped person in industry", and that "[w]hen compared to other employees of the workshop, of which there are 35, [claimant] is rated slightly above average in his work".

The latest examination of claimant appearing in the record is that of Dr. David J. Flicker, made on August 9, 1960, at the request of counsel for claimant. The report of this examination was not before the Hearing Examiner, but it was submitted to the Appeals Council for consideration. Dr. Flicker reported that from the psychiatric aspect claimant was obviously and severely intellectually impaired. He noted "much fatuous inane grinning which alternates with vacuous inattention", and that there is "complete paucity of insight and judgment". From the objective aspect, the doctor noted "evidences of a cerebral spastic (palsy) state", and said that from a clinical aspect, claimant "is certainly totally incapacitated" and that the "prognosis for any recovery is nil".

In this case it is not disputed that claimant has the necessary status under 42 U.S.C.A. § 402(d) (1) to receive benefits, provided he meets the test of disability laid down in 42 U.S.C.A. § 423(c) (2). That section defines "disability" to mean "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration."

On the basis of the evidence before him at the time of the hearing on February 15, 1960, the Hearing Examiner concluded that claimant did not establish the existence of an impairment of sufficient severity to justify the granting of benefits. He was of the opinion that claimant possessed sufficient learning ability to enable him to acquire various skills for use in substantial gainful activity. The Examiner noted that claimant was friendly and well liked by others; that he is able to travel alone by bus; that he has ability to play baseball, basketball and checkers; that he is able to care for his personal needs; that he sometimes prepares his own breakfast; that he occasionally delivers meat orders for a local butcher; that he runs errands for his mother; that once a month he washes a neighbor's automobile; that he can read a newspaper, such reading, however, being limited to the weather reports and comic strips; that he has a collection of playing records and enjoys watching television; and that for the year last past, claimant's attendance at OCEC was regular. The testimony given by claimant at the hearing concerning the nature of the work he was then doing at OCEC was vague and related to "stripping wire", working on "Remco" toys, assembling "hair curlers" and packaging "Anacin" tablets. Claimant's mother testified that the deliveries made by claimant for the local butcher occurred not more than once a day, that

claimant made no deliveries for other merchants, and that the car washing job was a monthly affair for which claimant received $2.00.

When the case reached the Appeals Council for review, the record was supplemented by additional evidence, which has been commented upon elsewhere in this opinion. The Appeals Council adopted and affirmed the decision of the Hearing Examiner, and concluded from the record before it that the training received by claimant at OCEC had enabled him to learn how to work and to make any personal adjustment needed for competitive employment; that claimant "has demonstrated an ability to perform bench work, such as light assembly work"; and that, as reported, claimant "has a capacity for cafeteria and packaging work".

██ A claimant for disability benefits is obliged to furnish proof of the existence of the required conditions for eligibility. Here, it was necessary for claimant to establish a condition of disability prior to the date he attained the age of 18 years. As noted, benefits were denied to claimant because the Appeals Council found that the evidence did not "establish the existence of an impairment of sufficient severity as to continuously prevent claimant's engagement in any substantial gainful activity from a date prior to the attainment of age 18". If this finding is supported by substantial evidence, it is conclusive. The Court's function is to determine whether there is substantial evidence in the record to support the finding made by the Secretary. See 42 U.S.C.A. § 405(g).

██ In this Circuit, the law is clear that in a case of this kind, the Secretary of Health, Education and Welfare must determine what employment opportunities are available to a claimant, in the light of his physical and mental condition and educational and vocational background. There should be a finding that reasonable opportunities exist for a particular claimant to engage in substantial gainful employment. A mere theoretical ability to do so is not enough if no reasonable opportunity for such employment is available. Hodgson v. Celebrezze, 312 F.2d 260 (3 Cir., 1963); Farley v. Celebrezze, 315 F.2d 704 (3 Cir., 1963); Braun v. Ribicoff, 292 F.2d 354 (3 Cir., 1961); Klimaszewski v. Flemming, 176 F.Supp. 927 (E.D.Pa. 1959).

██ Nowhere in this record are there findings with respect to the employment opportunities open to the claimant, a 22 year old mentally retarded youth, with a mental age of 13 years 7 months. True, the Secretary found claimant "has demonstrated an ability to perform bench work, such as light assembly work, and * * * cafeteria and packaging work". But this finding is based on work done in a "sheltered" environment. Moreover, it does not answer the question as to whether employers in competitive industry would hire claimant to do such work. Assuming claimant is physically and mentally able to perform the several jobs suggested in the record, where is he to find such employment? No effort has been made by the Secretary to show that jobs, such as those suggested, are open to someone like claimant, with his physical and mental limitations and his educational and vocational history. At the very least, the Secretary should investigate the reasonable possibility of claimant obtaining such employment, and to demonstrate more than just a "mere theoretical ability" on claimant's part to engage in substantial gainful activity.*

For the reasons herein stated, both motions for summary judgment will be denied, and the case will be remanded to the Secretary with directions to take such further evidence as may be neces-

---

\* The Court notes that more than 2 years have elapsed since the Appeals Council decided this case. An evaluation of claimant's work activity during this interim, coupled with an investigation of job opportunities available to claimant, may assist the Secretary in making a determination of the issue of employability.

sary to determine the issue of claimant's employment opportunities and to make additional findings with respect thereto.

Counsel for plaintiff will submit order on notice.