**Myrtle E. LOWE, who sues on behalf of herself and her daughter, Anna L. Lowe, Plaintiff,**

**v.**

**Robert FINCH, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 68-C-87-A.**

United States District Court
W. D. Virginia,
Abingdon Division.

March 14, 1969.

---

James R. Moore, Abingdon, Va., for plaintiff.

William C. Breckinridge, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION AND JUDGMENT

DALTON, Chief Judge.

Mrs. Myrtle E. Lowe, the claimant, brings this action under section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), for review of a decision of the Secretary of Health, Education and Welfare. It is the claimant's contention that her daughter, Anna L. Lowe, is entitled to child's insurance benefits under

section 202(d) of the Act, as amended, 42 U.S.C.A. § 402(d) (Cum.Supp.1969). In order for a dependent child to be entitled to child's insurance benefits under section 202(d), it must be established that the child, prior to the age of eighteen, was under a "disability" [1] as defined by section 223(d) of the Act, as amended, 42 U.S.C.A. § 423(d) (Cum.Supp.1969).

 The decision of the Secretary held that the evidence was insufficient to show that Anna Lowe was unable to engage in any substantial gainful activity prior to her attaining the age of eighteen. In reviewing this decision of the Secretary the question for this court is whether the decision is supported by substantial evidence. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). For the reasons which follow we find that it is not, and, accordingly, reverse.

Anna Lowe, who is now forty-five years old, is an unmarried female who has lived with her parents all her life. Although she has been mentally retarded since birth, it was not until 1967 that she first underwent psychiatric testing and evaluation. The resulting medical report revealed the following:

Miss Lowe was not particularly cooperative with the testing efforts. When pressed she became very irritated and refused to perform. This makes it difficult to judge just what her intellectual potential is. Her sentence structure and vocabulary would indicate that she is probably functioning within the borderline defective range. Yet, her scores on the WAIS would indicate that she is moderately defective with a verbal I.Q. of 63, a performance score of 70, and a full scale I.Q. of 64. This woman is very poorly informed. Her judgment is impaired, she has much difficulty calculating, her thinking is very concrete, she has trouble sorting essentials from nonessentials, and she has considerable difficulty with analysis and syntheses. * * * Miss Lowe's performance on the Bender-Gestalt Test suggests a rather low level of functioning. She cannot remember, she is highly anxious, she is impulsive, and she is negativistic. * * *

It would appear from surveying the test results that Miss Lowe is only mildly defective and that she has rather severe functional problems. She certainly has a propensity for psychotic behavior, and she has very little motivation to use what potential she has. Apparently she has been convinced and has now convinced herself that she is rather helpless and incapable of being

---

1. As defined in the Social Security Act, the term "disability" means—

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months * * *.

* * * * *

For purposes of paragraph (1) (A)—

(A) an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

* * * * *

For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

42 U.S.C.A. § 423(d), as amended (Cum. Supp.1969).

This amended definition applies to court decisions which have not become final before January, 1968. Pub.L. No. 90–248, § 158(e), 81 Stat. 821.

productive. This is well ingrained, and it is a picture that is not going to change.

This assessment of Miss Lowe's mental competence is corroborated by the other medical evidence in the record, dating since 1966, and the consensus is that Miss Lowe has the mental age of an eight or ten year old.

Mrs. Lowe, the claimant, states that Anna has always been mentally deficient, an opinion which is supported by that of numerous friends and acquaintances of the Lowes. Mrs. Lowe described her daughter as an emotional child, sensitive about her condition and prone to cry when her feelings were hurt, which was often. Anna began school at the age of eight and quit at age thirteen without satisfactorily completing the third grade. The record of her school performance shows average or above average marks in reading, writing and spelling, but consistently poor or failing marks in English and arithmetic. She has rudimentary reading and writing skills, but even now is incapable of performing the simplest arithmetic. She cannot handle money or appreciate its value. Mrs. Lowe stated that Anna quit school at the age of thirteen because she could not learn, a statement consistent with her brief school record. It also appears that at the time Anna quit school her services were needed around the home, since her father became disabled and her mother had to go to work to provide for the family of ten children. Two of Anna's younger brothers are also mentally retarded, and it seems that for the past thirty years Anna has shouldered some of the responsibility for their care and supervision while Mrs. Lowe was at work. Anna's domestic talents are limited, however, since she does only light housework and prepares simple meals which do not require much cooking.

Although Anna has never been a behavioral problem, and is capable of taking care of simple personal needs, she has never been permitted to function without close supervision. Her only activities outside the home are attending church, which she does at every opportunity. Her mother describes her as a religious fanatic.

Anna Lowe's only work experience occurred during World War II, when she was twenty-one or twenty-two years old. At the hearing before the hearing examiner Anna testified that she worked an eight-hour shift, five days a week. She said she enjoyed the work, which she described as consisting of gluing domes on B–29 airplanes, and that she got along well with the other girls in the crew. Anna's job was terminated after three or four months when the war ended. Mrs. Lowe explained she also worked at the factory, which she says was hiring anyone who applied, and that Anna's conduct at work was rather foolish and a constant source of embarrassment to Mrs. Lowe.

In his decision denying disability benefits the hearing examiner relied primarily on his belief that Anna's brief work experience had demonstrated an ability to engage in substantial gainful activity. He also cited the report of a psychiatric consultant to the Social Security Administration, who reviewed the record and concluded:

> There is no evidence whatever that she is not able to go around by herself. There is no evidence that she has ever gotten into trouble because she was unable to avoid danger. Her mother says that she is unable to manage money, but we have no objective evidence that this is the case. * * * Even now * * * a psychologist who saw her finds an I.Q. of 64. At the time of her 18th birthday it could not have been less than this and was probably higher. It is equally probable that her motivations to use her potentials that she had were not as inactive as they have gradually become over the intervening years. An I.Q. of 64 in itself could not be considered the basis for allowance in the absence of specified additional conditions which are not demonstrated to have been present on or before her 18th birthday.

We think these conclusions are not supported by the record. The fact that

Anna has never been permitted to function independently of parental supervision explains why she has avoided dangerous situations, and strongly suggests that she has never demonstrated an ability to fend for herself. Further, we can see no reason to doubt the testimony of Mrs. Lowe that Anna does not know the value of money and cannot even select and purchase her own clothes. Although Miss Lowe may have had a higher I.Q. and more motivation prior to the age of eighteen, she would still have been on the borderline of mental deficiency, without any marketable skills, and physically and emotionally dependent on others for support and guidance. While theoretically she might have been taught to be more self-reliant, the fact is that she never was.

We also think the hearing examiner gave too much weight to Miss Lowe's brief work experience. Quite apart from the fact that her job did not exist outside the wartime economy, there is the fact that Miss Lowe worked with a crew of other women and not independently, that the job lasted only four months, and that Mrs. Lowe was there to look after her. Such a brief period of work under these somewhat sheltered conditions does not demonstrate an ability to perform work which is both substantial and gainful in a normal, competitive work environment. See Secoolish v. Celebrezze, 216 F.Supp. 935 (D.C.N.J.1963); Campbell v. Flemming, 192 F.Supp. 62 (W.D.Ky1961); Randall v. Flemming, 192 F.Supp. 111 (W.D. Mich.1961). On the contrary, the fact that Miss Lowe has worked for only four months in her forty-five years, when her parents obviously could ill afford to support her financially, would indicate an inability to engage in substantial gainful activity.

No doubt a man afflicted with mental deficiency might be capable of gainful work such as unskilled or arduous physical labor. See Boyd v. Gardner, 377 F.2d 718 (4th Cir. 1967); Doody v. Ribicoff, 208 F.Supp. 560 (E.D.N.Y.1962); Evans v. Ribicoff, 206 F.Supp. 97 (S.D.W.Va. 1962). But the type of work illustrated in these cases is not available to a woman like Miss Lowe. See Jones v. Celebrezze, 234 F.Supp. 978 (W.D.N.C.1964). In view of her dependence on others for supervision and guidance and her lack of job skills or training, we can imagine no type of work for which Miss Lowe would be suited.

The medical evidence in the record conclusively establishes that Miss Lowe is presently incapable of working, a fact which the Secretary concedes, and the evidence in the record, viewed as a whole, permits only one inference: Anna Lowe has never been capable of gainful activity. There is no substantial evidence in the record to rebut this inference. Although the Act casts upon the claimant the burden of proving a disability, this burden should not be carried to a point beyond a reasonable doubt. Thomas v. Celebrezze, 331 F.2d 541, 545 (4th Cir. 1964). The Social Security Act is remedial in purpose, intended for the benefit of persons such as Miss Lowe who, because of physical or mental impairments, are incapable of competing for a living in the national economy, and to this end the Act should be construed liberally. See Rasmussen v. Gardner, 374 F.2d 589 (10th Cir. 1967); Brooks v. Gardner, 276 F.Supp. 20 (W.D.Va. 1967). It would frustrate the purpose of the Act to deny these benefits solely because there exists no medical evidence describing her condition as it existed prior to the age of eighteen. We think that the medical and other evidence in the record is sufficient to convince one that Miss Lowe has been under a disability both before and since her eighteenth birthday, and the Act does not require more proof than this. See 20 C.F.R. §§ 404.1523, 404.1524 (1969).

Since there is no substantial evidence to support the decision of the Secretary of Health, Education and Welfare, the decision is reversed and summary judgment granted in favor of the claimant.