**Mildred K. HAWKINS for Carol REILLY, Plaintiff,**

v.

**Margaret HECKLER, Secretary of Health and Human Services, Defendant.**

Civ. A. No. 84–1870.

United States District Court, D. New Jersey.

July 18, 1985.

Mandel, Wysoker, Sherman, Glassner & Weingartner by Henry M. Spritzer, Perth Amboy, N.J., for plaintiff.

W. Hunt Dumont, U.S. Atty. by Viola S. Lordi, Sp. Asst. U.S. Atty., Newark, N.J., for defendant.

DEBEVOISE, District Judge.

*Nature of the Action*

This is an action brought under section 205(g) of the Social Security Act, as amended (hereinafter referred to as the Act), 42 U.S.C. § 405(g), to review a final determination of the Secretary of Health and Human Services (hereinafter referred to as the Secretary), which denied plaintiff's application for child insurance benefits. Plaintiff Mildred Hawkins is assisting claimant Carol Reilly in the pursuit of her claim because Reilly is allegedly unable to do so in light of her emotional condition.

*Procedural History*

The plaintiff applied for child insurance benefits on behalf of her maternal niece, Carol Reilly, on April 19, 1983. The application was based upon the earnings record of Walter A. Reilly, claimant's deceased father (T. 11, 30–35). On this date, plaintiff also filed a request to be selected as payee of the benefits due to Reilly (T. 63–66).

Plaintiff was informed on June 9, 1983, that Reilly is not entitled to disability benefits (T. 36; See Disability Determination Rationale of June 2, 1983). Plaintiff requested reconsideration of the disapproved claim on June 27, 1983 (T. 39). She also filed a Reconsideration Disability Report, noting essentially the same complaints regarding Reilly's condition (T. 53–58).

In a notice dated July 11, 1983, plaintiff was informed of the further disapproval of her claim on behalf of Reilly (T. 40–43). A Request for Hearing was then filed on August 23, 1983, along with a supporting statement (T. 44, 59–60).

On December 2, 1983, a hearing was held before an Administrative Law Judge ("ALJ"). Plaintiff and Reilly both appeared (T. 9–29). A decision was rendered on December 27, 1983. The ALJ found that Reilly did not have a disabling impairment prior to her 22nd birthday, and therefore was not entitled to an award of child insurance benefits (T. 7).

On February 14, 1984, plaintiff requested a review of the hearing decision by the Appeals Council. This request was denied on March 13, 1984 (T. 2). Plaintiff then filed an action in Federal District Court on May 11, 1984, on behalf of the claimant Reilly.

*Issue*

The issue to be determined by the court is whether the ALJ's decision to deny disability benefits was supported by substantial evidence.

*Statement of Facts*

Reilly was born on June 19, 1947. Mildred Hawkins, who has known claimant since birth, has cared for her since the death of claimant's father in February 1983. Reilly's mother had died earlier (T. 15, 22–23). Reilly's application for Social Security disability benefits is based upon the earnings of her late father.

It is alleged that Reilly had become disabled in 1952 when she was five years old (T. 47). A report of the child study department of the South Orange and Maplewood Public Schools, dated October 31, 1952, noted several complications. Among those observed were low-average intelligence, delayed motor development, severe motor disability regarding finger manipulation, seriously delayed practical judgment, seriously retarded social development, poor visual perception and orientation, and a general misinterpretation of reality (T. 79–80).

A second report was issued by the same facilities on October 17, 1960, when Reilly was thirteen years old. The following impressions were noted: (a) below-average ability and erratic mental functioning equivalent to a two year retardation; (b) retarded social intelligence; (c) tense, frustrated, and frightened behavior with an inability to cope with her environment; (d) egocentric orientation, with strong hostile

impulses and feelings of loneliness and isolation (T. 81–83). Dr. Lewis Loeser, in a letter to Dr. Jack Schwartz dated November 17, 1960, suggested a mild form of cerebral palsy, along with the possibility that Reilly was developing chorea.[1]

Dr. Joseph Pitone, a specialist in internal medicine and cardiovascular diseases, examined Reilly at the request of the Division of Disability Determinations in July of 1978. He noted a history of usual childhood diseases as well as bronchitis, and offered a diagnosis of anxiety and bilateral cystic mastitis. Also, Dr. Stephen Victor, a Board-certified psychiatrist and neurologist, examined Reilly in July, 1983. Dr. Victor noted static encephalopathy with mild mental retardation and movement disorder (cerebral palsy), and the possibility of Prachtl's Syndrome (T. 90–91). He also stated that her disorder and disability is of long standing and recommended some type of rehabilitation. It was suggested, however, that further neurological diagnostic procedures would most likely be futile.

In support of the application for child insurance benefits, plaintiff Mildred Hawkins filed a concurrent medical history and disability report (T. 42–52). Plaintiff described Reilly's disabling condition as an extreme nervous condition, characterized by spasticness, incessant talking, inconsistent thoughts, and laughter at inappropriate times.

At the disability interview dated April 19, 1983, it was observed that Reilly had difficulty answering, sitting and understanding, but no difficulty hearing, using her hands, breathing, seeing or walking. She was characterized as a 35 year old white woman whose physical appearance is that of a 14 year old girl.

The Disability Determination Rationale dated June 2, 1983, indicated that Reilly had some emotional and developmental problems as well as an IQ score of 83 and the possibility of some mild central nervous system involvement. It was further noted, however, that no diagnosis had been established and that there was insufficient evidence to establish a continuing disability on or before June 19, 1969 to the present. Thus, it was determined that Reilly's condition does not satisfy the special requirements for childhood disability benefits.

At the Social Security Administration interview dated June 27, 1983, the interviewer noted that Reilly moved about in her chair, waived her hands, made sudden jerky movements, and constantly talked about inappropriate things. She also had difficulty in answering, speaking, understanding and sitting.

Reilly testified in her own behalf at the hearing before the ALJ on December 2, 1983 (T. 9–29). She stated that she had never worked and was not able to work previously because she was extremely nervous and could not handle the pressure. Furthermore, she explained that although she had graduated from Columbia High School, she was not able to obtain a driver's license because of her nervous condition (T. 14–15). Plaintiff also testified, indicating that Reilly suffered from social and mental disorders as a child (T. 24–27).

The ALJ rendered his decision on December 27, 1983. He stated that severe emotional disturbance found by the guidance departments of the public schools was not supported by the neurological psychiatric report. The somewhat indecisive report of Dr. Loeser dated November 17, 1960 inferred that there was no medically supportable basis upon which to establish a causal relationship between Reilly's nervousness and her diagnosed condition. The remaining medical reports dated after June 19, 1969 were considered irrelevant by the ALJ. Plaintiff's testimony regarding Reilly was deemed persuasive, but could not serve as the basis of a finding of disability in the absence of evidence of a severe, medically determinable condition (T. 7).

---

1. Chorea is defined as the ceaseless occurrence of a wide variety of rapid, highly complex, jerky movements that appear to be well coordinated but are performed involuntarily. *Dorland's Illustrated Medical Dictionary* (twenty-sixth Edition).

It was therefore concluded that Reilly did not have a disability impairment prior to her 22nd birthday and thus was not entitled to an award of child insurance benefits.

*Discussion*

Plaintiff applied for child insurance benefits based on a disability. To be eligible for such benefits, a claimant must establish that she is under a disability that began before she attained the age of 22 and that the disability continued to the time of the claimant's application for benefits. 42 U.S.C. § 402(d)(1). Therefore, Reilly, the claimant in this case must establish that she was under a disability on or before June 19, 1969.

Disability is defined as the inability to engage in any substantial gainful activity by reason of a physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). An individual will be presumed to be disabled when it is shown that the alleged impairment is among those listed in Part A of Appendix 1, or is the medical equivalent of a listed impairment therein.

■ The existence of an impairment must be demonstrable by medically acceptable clinical or laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). Also, the court must consider other factors, such as objective medical facts, subjective evidence of disability, and claimant's age, educational background and work history. *Curtin v. Harris*, 508 F.Supp. 791 (D.N.J.1981).

The ALJ, in making his determinations, excluded all medical evidence dated after 1969. Consequently, the ALJ did not consider Dr. Pitone's diagnosis of July 1978 and Dr. Victor's diagnosis of July 1983. Hence, the medical evidence considered by

the ALJ essentially consisted of a neurological/psychiatric report dated November 17, 1960.[2] The two reports issued by the child study department of the South Orange-Maplewood Public Schools were reviewed, but apparently dismissed as unsupportable.

■ A court should affirm the judgment of an ALJ if it is supported by substantial evidence. See Appendix B. After careful consideration of the entire record, I find that the ALJ's decision is not supported by substantial evidence. Therefore, the decision below must be reversed and remanded for further consideration consistent with this opinion.

■ Plaintiff and Reilly were not represented by counsel prior to this appeal. In this situation, the ALJ has the obligation to fully develop the record. *Hess v. Secretary*, 497 F.2d 837 (3rd Cir.1974). This may require that the ALJ advise Reilly that vital data is missing or order a physical examination by a Social Security Administration doctor. *Id.* at p. 841; *Gachette v. Weinberger*, 551 F.2d 39, 41 (3rd Cir.1977). In such a case, omission to inform a claimant of the desirability of securing medical reports from a treating physician is cause for remand. *Singleton v. Schweiker*, 551 F.Supp. 715 (E.D.Pa.1982) Upon review, however, additional medical information seems not only proper, but necessary.[3]

On page 3 of his findings, the ALJ concluded that "(t)he remainder of the medical evidence dates from the period after June 19, 1969, and is, therefore, not relevant to the central issue of the existence of a disabling impairment prior to the claimant's 22nd birthday." (T. 7). In ascertaining whether a disability existed prior to 1969, it is not necessarily correct that only medical reports issued prior to that date be afforded consideration. Conceivably, a post-1969 diagnosis which concludes that a disability

---

2. See end note 3, infra.

3. This is particularly true in this case. In denying childhood disability benefits to claimant, the ALJ seems to rely primarily on Dr. Loeser's letter dated November 17, 1960. This letter, however, is clearly inconclusive. Furthermore,

it appears that the ALJ dismissed the findings of the two reports issued by the claimant's public school system because they were inconsistent with Dr. Loeser's cursory diagnosis (See Tp. 84). This was error.

existed prior to 1969 and which discusses the extent of that disability would be relevant. Such is the case here.

Counsel for plaintiff has submitted two additional medical reports subsequent to the ALJ's decision. The report issued by Dr. Charles Semel, dated July 2, 1984, states that Reilly apparently sustained a birth injury causing a syndrome either similar to or consistent with cerebral palsy. Dr. Semel also notes that the most likely explanation for Reilly's intellectual and emotional impairment stems from either intrauterine damage or damage to the brain at the time of birth. This is most likely caused by a lack of oxygen (anoxia). Dr. Semel thus concludes that Reilly "could not hold the most simple of jobs at the present time or any time during the prior two decades." *See* p. 2 of Report.

Also, Dr. Sol Heckleman, a licensed psychologist, issued a report dated September 18, 1984. Dr. Heckleman apparently reviewed the same medical reports and documents previously considered by the ALJ. In noting the marked and serious disabilities in practical and social functioning throughout Reilly's school years, Dr. Heckleman states that Reilly clearly was disabled long before her 22nd birthday. After a perceptive discussion of Reilly's school records, he concludes that "Ms. Reilly has never been able to adequately handle any sort of competitive job with criteria for output or reliability." *See* p. 2 of Report.

■ Under 42 U.S.C. § 405(g), the Court may at any time "order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." In *Szubak v. Secretary of Health and Human Services*, 745 F.2d 831, 833 (3rd Cir.1984), the Third Circuit construed § 405(g), which had been amended and revised in 1980, as follows:

As amended in 1980, § 405(g) now requires that to support a "new evidence" remand, the evidence must first be "new" and not merely cumulative of what is already in the record. *E.g. Bomes v. Schweiker*, 544 F.Supp. 72, 75–76 (D.Mass.1982). Second, the evidence must be "material"; it must be relevant and probative. *E.g. Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir.1981). Beyond that, the materiality standard requires that there be a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination. *Id.; See Also Bomes*, 544 F.Supp. at 76. An implicit materiality requirement is that the new evidence relate to the period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition. *See Ward v. Schweiker*, 686 F.2d 762, 765 (9th Cir. 1982). Finally, the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record. *E.g. Brown v. Schweiker*, 557 F.Supp. 190 at 192 (M.D.Fla. 1983).

Plaintiff has certainly met the materiality requirement, as both reports contain relevant and probative evidence which manifests a clear probability that Reilly's present state of impairment did exist prior to her 22nd birthday. Furthermore, since the plaintiff and Reilly were not represented by counsel at the hearing before the ALJ, it seems clear that good cause has been shown. Finally, the paucity of the record below warrants this additional evidence under the "new evidence" standard as these medical reports provide important medical data not contained in the record. Specifically, Dr. Semel's diagnosis of a birth defect as the primary cause of Reilly's severe condition was not documented in any of the earlier reports. Also, Dr. Heckelman's psychological report discusses in detail the history of Reilly's mental disabilities as well as her lifelong inability to cope in the job market. Thus, these reports are to be included in the record, and upon remand, are to be given serious consideration as there is a "reasonable possibility" that this evidence might have

changed the ALJ's decision.[4] It is also suggested that the assistance of a vocational expert may be helpful. *See Stewart v. Harris,* 508 F.Supp. 345 (D.N.J.1981).

*Conclusion*

 Childhood disability benefits may not be denied based on a mere theoretical ability of a claimant to perform substantial gainful activity. *Secoolish v. Celebrezze,* 216 F.Supp. 935 (D.N.J.1963). The provisions of the Act must be read in terms of what is reasonably possible and not what is conceivable. *Janek v. Cellebrezze,* 336 F.2d 828 (3rd Cir.1964). In the instant case, the ALJ erroneously placed undue emphasis upon the absence of objective criteria, as the findings made by the ALJ seemed to be purely speculative. *Curtin,* 508 F.Supp. at 795; *Smith v. Califano,* 637 F.2d 968 (3rd Cir.1981). The decision to deny benefits to Reilly is thus not supported by substantial evidence because the evidence relied upon in the record was inadequate. Therefore, the ALJ's decision will be reversed and remanded for proceedings consistent with this opinion.

The court will enter its own order.

## APPENDIX B

Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) *quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938). Hence, even though a court might render a different decision if it were weighing the evidence, it may not displace the Secretary's choice between two fairly conflicting views. *Blalock v. Richardson,* 483 F.2d 773 (4th Cir.1972). On the other hand, despite the

deference which must be accorded the administrative agency, the reviewing court retains "a responsibility to scrutinize the entire record and to reverse or remand" if the Secretary's decision is not supported by an adequate factual foundation. *Smith v. Califano,* 637 F.2d 968, 970 (3d Cir.1981).

To enable this court to properly perform its function of review, the administrative decision "should be accompanied by a clear and satisfactory explanation of the basis on which it rests," *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir.1981), and the "examiner's findings should be as comprehensive and analytical as feasible." *Baerga v. Richardson,* 500 F.2d 309, 312 (3d Cir.1974), *cert. denied,* 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975). The ALJ should indicate not only the evidence which supports his or her conclusion, but also any "significant probative" evidence that was rejected and the reasons for so doing. *Cotter v. Harris, supra.*

An ALJ's determination is not supported by substantial evidence if it is based upon "purely speculative inferences" from the record. Corroboration by sound medical evidence is "essential to a finding of non-disability." *Smith v. Califano, supra,* at 972; *see also Taybron v. Harris,* 667 F.2d 412 (3d Cir.1981). If the record is not sufficiently complete to support a reasoned decision for or against disability, the ALJ has a duty to develop the record, particularly if the claimant is not represented by counsel at the administrative hearing. *Dobrowolsky v. Califano,* 606 F.2d 403, 406–07 (3d Cir.1979). Proper development of the record involves a careful examination of the claimant and available witnesses in light of the standards governing proof of disability, *Livingston v. Califano,* 614 F.2d 342 (3d Cir.1980). If essential medical evidence is absent from the record, the ALJ

---

**4.** It also noted that on remand, the ALJ may wish to consider Dr. Victor's report of August 2, 1983. This report was previously found to be not relevant by the ALJ due to his exclusion of all post-1969 medical reports. See p. 714, *supra.* It appears from this report that claimant's condition may have related to pre-1969 disabilities. See Tp. 91. Dr. Pitone's report of July

1978, which was also excluded from consideration may not appear to be significant in this matter. However, on remand it should be determined if perhaps it in fact does have relevance to Reilly's pre-1969 condition. Both reports were discussed previously in the statement of facts, *supra.*

must secure additional information from claimant's own physician or arrange for a medical examination by a physician of the Social Security Administration's own selection. *Hess v. Secretary of Health, Education and Welfare*, 497 F.2d 837 (3d Cir. 1974). *See* 20 C.F.R. § 950(d).