**Earl SINGLETON**

**v.**

**Richard S. SCHWEIKER, Secretary of Health and Human Services.**

**Civ. A. No. 81–2485.**

United States District Court,
E.D. Pennsylvania.

June 23, 1982.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

716

James Lafferty, Philadelphia, Pa., for plaintiff.

Edward Borden, Philadelphia, Pa., for defendant.

## ORDER

JOSEPH S. LORD, III, District Judge.

Now, this 23rd day of June, 1982, after careful and independent consideration of

the cross-motions for summary judgment and after review of the Report and Recommendation of the United States Magistrate, to which no objections have been filed, IT IS ORDERED that:

1. The Report and Recommendation is Approved and Adopted as the Opinion of the Court.

2. The plaintiff's motion for summary judgment is DENIED.

3. The defendant's motion for summary judgment is DENIED.

4. The case is REMANDED to the defendant, Secretary of Health and Human Services for proceedings not inconsistent with this Opinion.

## REPORT—RECOMMENDATION

### June 8, 1982.

RICHARD A. POWERS, III, United States Magistrate.

This is an action brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to review the final decision of the Secretary denying the plaintiff's claim for disability benefits under Title II and Title XVI of the Social Security Act.

The plaintiff, who is forty-three (43) years old, has an eleventh grade education (tr. 79), and work experience as a truck driver (tr. 35), was found disabled as of March 31, 1977 due to atypical pulmonary tuberculosis, diabetes mellitus and essential hypertension. (tr. 56).

Upon re-evaluation of the plaintiff's case in January of 1980, the Secretary determined that the plaintiff had again become able to perform his usual occupation and was no longer disabled. (tr. 58, 60). Accordingly, the plaintiff was notified on March 5, 1980 that his Disability Insurance Benefits and Supplemental Security Income benefits would be terminated because of his improved condition. (tr. 61–64).

The plaintiff appealed this determination (tr. 24), and the case was considered *de novo* by an Administrative Law Judge (ALJ), before whom the plaintiff appeared without an attorney on December 2, 1980. (tr. 25).

Medical evidence at the hearing consisted of various medical reports which were made part of the record.

The plaintiff was admitted to Misericordia Hospital from March to April, 1975, suffering from acute pancreatitis, pulmonary embolism, diabetes mellitus, acute and chronic alcohol abuse, and a urinary tract infection. (tr. 110–112). The plaintiff was admitted complaining of acute epigastric pain accompanied by nausea and vomiting. (tr. 110). At the time of his discharge it was noted that the plaintiff's symptoms had almost completely resolved and his condition was one of marked improvement. (tr. 111).

Also included in the record are reports of the plaintiff's treatments as an outpatient at Misericordia Hospital from May of 1975 until April of 1977. (tr. 113–130). A lung scan taken May 27, 1975 was compared with one taken April 10, 1975 and stated that there was:

... still some decreased perfusion in the right lower lobe of the lung corresponding to the previously noted decreased perfusion in this area and to the haziness noted in the previous chest x-ray. The appearance of the scan, however, is markedly improved since the previous study. The area of decreased perfusion in the right apex is no longer seen in this examination. (tr. 128).

An examination of the plaintiff's chest was conducted on November 24, 1976 and was again compared with the study of April 11, 1975. (tr. 120). The impression of W. Bichara, M.D. was that "[t]he heart is borderline in size. There is patchy infiltrate in the right base with minimal blunting of the right costophrenic angle. The left costophrenic sinus is clear." (tr. 120). A third examination of the plaintiff's chest was conducted on March 9, 1977 and compared with that of November 24, 1976. (tr. 116). It was reported that:

... [t]he heart is top limits of normal. The costophrenic sulci are clear. There is some residual fibrotic scarring seen in the right lower lobe. This was seen as well

as an active infiltrate was seen on the previous study of 1/26/76 (sic). I do not see any evidence of an active infiltrate at this time. The lungs appear free of active inflammatory lung disease or pleural disease. (tr. 116).

The plaintiff was treated at the Hospital of the University of Pennsylvania from February 9, 1978 until June 30, 1978. (tr. 131–134). A report of the plaintiff's chest dated June 30, 1978 states that its appearance is generally similar to prior films dating to January of 1978 in that:

> ... there are some cystic and somewhat nodular changes at the right base which improve (sic) very slightly over the earlier films. This patient reportedly has had atypical micro bacterium in his sputum and it seems quite likely that these changes represent atypical micro bacterium infection. There probably is (sic) one or several small cavities in the area as well. (tr. 131).

The plaintiff was examined at the Thomas Jefferson University Hospital on September 10, 1978 and the diagnosis given was the following:

> Curvilinear density, right lower lung field, which may represent residual parenchymal abscess or parenchymal scarring. Nodular densities of uncertain significance. (tr. 137).

A pulmonary laboratory report from Thomas Jefferson University taken September 27, 1978 indicates "mild obstructive lung disease." (tr. 138). Specifically, the following interpretation was made: "FVC is slightly decreased. $FEV_1/FVC$, $FEV_3/FVC$ are normal. MMEFR is moderately decreased. MMIFR is moderately decreased. MVV is slightly decreased .... The decreased MMIFR may be due to poor patient effort or upper airways obstruction." (tr. 138).

The plaintiff was examined on December 4, 1978 by Harold Israel, M.D. whose report states that the plaintiff's chief complaints were weakness of the right leg and nerves. (tr. 151). The past medical history of the plaintiff revealed the following:

He admitted to having been a heavy drinker in the past. In 1974 he was hospitalized at Misericordia and found to have hepatitis, hypertension and diabetes. In 1978 he was in the hospital of the University of Pennsylvania with an acute lung abscess. After discharge, he noticed increased weakness of his right foot which had been injured by a bullet wound in 1973 and his family physician made a diagnosis of diabetic neuropathy. He was reexamined at the University of Pennsylvania Hospital and a brace was prescribed for his right leg. He is at present, taking 35 units of NPH insulin, he is taking Isoniazid as well as medication for hypertension. (tr. 151).

Dr. Israel noted that the plaintiff was wearing a brace and that there was marked atrophy of the right leg. (tr. 151). A chest x-ray revealed a density in the right lower lung field "which probably represents scar of his lung abscess. Pulmonary function studies were performed and revealed a VC 64% of normal; a MVV 67% of normal." (tr. 151). Dr. Israel's report concludes that the plaintiff appears to have alcoholic hepatitis and both pulmonary and bronchial disease with moderate ventilatory impairment which would be disabling for physical exertion. (tr. 151). In addition, Dr. Israel concluded: "[h]is principle disability is the atrophic right leg requiring a brace for support. This is probably a result, in part, of diabetes, alcoholism and trauma .... Mr. Singleton is disabled for any type of work involving physical effort." (tr. 151).

The plaintiff was admitted to and treated by the Hospital of the University of Pennsylvania in November of 1978 for approximately two (2) weeks for atypical pulmonary tuberculosis, diabetes mellitus and hypertension. (tr. 147–150).

A report on the plaintiff's condition was submitted by Dr. Bissonnette who opined that he had been treating the plaintiff from December of 1977 until January 3, 1980. (tr. 156). In his report, Dr. Bissonnette determined that the plaintiff was continuing to be treated for atypical tuberculosis, for which he was receiving medication. (tr.

154). He noted that the plaintiff had a drop foot, a lung abscess, diabetes and hypertension. (tr. 155–157). Dr. Bissonnette was of the opinion that the plaintiff had a moderate restriction of activities involving being around moving machinery, driving automotive equipment, exposure to marked changes in temperature and humidity, and exposure to dust, fumes and gases. (tr. 155).

An examination of the plaintiff was made on January 16, 1980 on behalf of the Secretary by Stephen E. Mitteldorf, M.D., who noted that the plaintiff has had to wear a brace to prevent his right ankle from twisting from under him. (tr. 158).

> He claims that he can walk up to four to five blocks and climb up to two flights without discomfort. His only discomfort being a pulmonary (see paragraph below). Thus he is not restricted from an orthopedic sense but his limitation is caused mostly by his pulmonary problem. (tr. 158).

Dr. Mitteldorf characterized the plaintiff's pulmonary disease as "rather severe" (tr. 158) and conducted a pulmonary function study which indicated the following:

> With bronchodilators the forced vital capacity was 4.01 with an FEV–1 of 2.50 yielding a percent of 62, with an MVV of 74. Without bronchodilators the forced vital capacity is 3.67, FEV–1 of 2.52, yielding a percent of 69 and an MVV of 75. Based on a male of 72″, this patient is well above the minimum standards set for disability. This is in concurrence with the results of his physical examination which shows only mild to moderate obstructive pulmonary disease. (tr. 159).

Dr. Mitteldorf concluded that "[i]n regard to the patient's claim for disability based on orthopedic and his pancreatic problems, I'm forced to conclude that this patient has only minimal orthopedic disability secondary to the trauma of his right ankle and certainly it does not appear that he is stigmatized by his chronic pancreatitis." (tr. 159).

A report, dated November 13, 1980, was submitted by Ronald B. Phillips, D.O., who is the plaintiff's treating physician. (tr. 175). In his report, Dr. Phillips stated that he had been treating the plaintiff for the previous year for diabetes mellitus, chronic pancreatitis, and chronic restrictive lung disease due to interstitial pulmonary fibrosis. (tr. 175). Dr. Phillips' report states that these diseases are all progressive and lead to an incapacitation to perform the activities of daily living. (tr. 175). He also noted that the plaintiff has had personality changes seen in chronic disease states, which alter his mechanism to cope with these problems. (tr. 175). It was Dr. Phillips' professional opinion that the plaintiff "will never be able to be gainfully employed for the remainder of his life years." (tr. 175).

On January 14, 1980, an examination of the plaintiff's chest was conducted by Arnd P. Schimert, M.D. who found "blunting of the costophrenic sinus on the right side and several fibrotic strands are seen in the periphery of the right mid and lower lung field, presumably due to inflammatory residual." (tr. 164). It was Dr. Schimert's conclusion: "[m]inimal old inflammatory changes of the right lower lung with pleural adhesions of the costophrenic sinus. 50% normal C–T ratio." (tr. 164).

At the December 2, 1980 hearing, Mr. Singleton, who was not represented by counsel, testified with regard to his continued inability to work. He was 41 years old at the time of the hearing (tr. 29) and stated that he went to the eleventh grade. (tr. 32). He worked for over 21 years as a tractor-trailer driver, where he had to lift over 100 pounds. (tr. 35–36). He had to stop working either in 1977 (tr. 42) or in the fall of 1978 and has not worked thereafter. (tr. 36–37). He stopped working due to his back problems, chest pains, and shortness of breath. (tr. 37).

In his testimony, Mr. Singleton was confused as to the dates of the various hospitalizations which he has undergone. He stated that he was hospitalized for the pancreatitis either in 1975 (tr. 38–39) or 1978. (tr. 42). He had a broken jaw in either 1977 or 1978. (tr. 38). Mr. Singleton did recall that he was in the hospital in 1978 for a

cyst on the pancreas and for high blood pressure. (tr. 43).

In describing his present condition, Mr. Singleton stated that he gets short-winded after walking a "couple of blocks". (tr. 32). He gets chest pains if he walks too far. (tr. 32). He must wear a brace on his right leg every day. (tr. 34). He also must wear a back brace. (tr. 34). His doctor told him that he has scar tissue in the lower spine, which causes him considerable pain at times. Due to this, he sometimes has difficulty sleeping at night. (tr. 34). Mr. Singleton said that he takes some kind of pain pills, on a daily basis, to help him sleep. (tr. 35).

For his various impairments, Mr. Singleton stated that he still takes the medicine for his lungs which he had been taking for the prior two (2) years (tr. 43), as well as the pain medicine for his back and nitroglycerin for chest pains. (tr. 44). He also takes some type of pain pills for the right arm, which, he said, "hurts from my elbow all up in my neck". (tr. 44). Mr. Singleton testified that he sees his treating physician, Dr. Phillips, as often as he needs to, which is about two (2) or three (3) times per month. (tr. 44). He also goes to the medical clinic and the pulmonary clinic at the Hospital of the University of Pennsylvania, on the average of one (1) or two (2) times per month. (tr. 44–45).

In describing his daily activities, Mr. Singleton stated that he does very little around the house, where he lives with his uncle. (tr. 31, 45). He does not help with repairs or work in the yard. (tr. 45). He does not do any painting or work on cars. He usually goes for a short walk every day. (tr. 46). He does not drive a car, although he can use public transportation if he must. (tr. 31–32).

Based upon the evidence submitted, the ALJ made the following findings:

1. Claimant was found to be disabled on March 31, 1977.
2. The medical evidence shows that claimant's impairments had improved in January 1980.
3. Claimant had the residual functional capacity to perform at least sedentary work in January 1980.
4. Considering his age, education, work experience and residual functional capacity, claimant had the ability to engage in substantial gainful activity in January 1980.
5. Claimant's disability ceased in January 1980.
6. Claimant's entitlement to a period of disability, disability insurance benefits, and supplemental security income ended with the close of March 1980. (tr. 21).

It was the ALJ's decision that "claimant's entitlement to a period of disability, disability insurance benefits, and eligibility for supplemental security income ended effective March 1980, the end of the second calendar month after the month in which the disability ceased." (tr. 21). The Appeals Council denied plaintiff's request for review of the ALJ's decision on April 16, 1981 (tr. 6) and again on August 24, 1981, after having considered additional evidence. (tr. 4–5). The Court currently has before it cross-motions for summary judgment.

## DISCUSSION

There are several arguments advanced in support of the parties' respective motions for summary judgment, dismissal and remand. The Secretary urges: (1) that the plaintiff's treating physician's conclusory statements of disability were not conclusive or binding on the Secretary; (2) that the plaintiff's subjective complaints of pain were not credible; and (3) that the ALJ's decision is supported by substantial evidence. On the other hand, the plaintiff claims: (1) that the plaintiff was prejudiced by the lack of counsel at the administrative hearing; (2) that the ALJ did not give full consideration to the plaintiff's subjective complaints of pain; (3) that the ALJ did not give the proper weight to the plaintiff's treating physician's report; (4) that the ALJ failed to obtain the testimony of a vocational expert at the administrative hearing in light of the plaintiff's nonexer-

tional impairment; and (5) that there was no improvement in the plaintiff's condition to warrant the termination of his disability benefits.

▮ The Social Security Act limits judicial review of the Secretary's final decision. 42 U.S.C. § 405(g). If the Secretary's decision is supported by substantial evidence it must be affirmed by the Court. 42 U.S.C. §§ 405(g) and 1383(c)(3); *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Substantial evidence is such relevant evidence which a reasonable mind might accept as sufficient to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3 Cir.1979). It has been further stated that:

> Consistent with the remedial purposes of the Social Security Act, the district court is also empowered to remand a case to the Secretary, on good cause shown, where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits. *Saldana v. Weinberger,* 421 F.Supp. 1127, 1131 (E.D. Pa.1976).

It is the rule in this circuit that lack of counsel in a social security disability hearing is not sufficient cause for remand, without some showing of either unfairness or clear prejudice at the administrative level. *Domozik v. Cohen,* 413 F.2d 5 (3 Cir.1969). This case must be remanded for the taking of additional evidence as good cause and clear prejudice at the hearing have been shown as follows.

At the hearing, the plaintiff was unrepresented by counsel. A colloquy ensued between the plaintiff and the ALJ on this issue:

> OPENING STATEMENT BY ADMINISTRATIVE LAW JUDGE: ... Mr. Singleton, you were advised in the notice of hearing of your right to be represented by a lawyer or other qualified person. Did you receive a copy of this notice?
>
> CLAIMANT: Yes.

> ALJ: You are not required to be represented. May I assume that being alone here today that you wish to proceed without any representation or counsel?
>
> CLAIMANT: Yes, sir.
>
> ALJ: Please speak up.
>
> CLAIMANT: Yes, sir. (tr. 27).

▮ The Secretary maintains that the written and oral notice of the right to representation by counsel were sufficient for purposes of the Social Security Act. However, language from *Saldana v. Weinberger, supra* at 1132–1133 held that mere notice of the right to representation is not sufficient:

> The Social Security Administration and/or the Administrative Law Judge, in informing claimants of their right to representation by counsel in the administrative hearing, should also state that counsel is available to represent indigent claimants without charge. Any other notice of the right to legal representation would be of no value to indigent claimants, unable to retain private attorneys. Without this information it is farcical for the Secretary to maintain that a claimant waived his or her right to be represented by counsel. *Cf. Rosa v. Weinberger,* 381 F.Supp. 377, 381 (E.D.N.Y.1974).

In this case, it is clear that neither the Secretary nor the ALJ stated to the plaintiff that counsel was available to represent the plaintiff free of charge. The notification of the plaintiff's right to counsel was therefore inadequate in light of the above.

▮ Additionally, the ALJ in this case found that the reports submitted by Dr. Phillips, the plaintiff's treating physician that the plaintiff is unable to do work, were not supported by laboratory or other evidence. (tr. 20). Accordingly, the ALJ gave greater weight to the other medical reports which he found to be "supported by laboratory findings and which show that claimant's medical conditions were not so severe in January 1980 as to prevent him from engaging in substantial gainful activity." (tr. 20). The ALJ said nothing to the plaintiff concerning the desirability of submitting the medical and laboratory reports of

his treating physician. In a case, such as this, where the plaintiff is not represented by counsel, such omission to inform the plaintiff of the desirability of securing the medical reports has been found cause for remand. *Hess v. Secretary of Health, Education and Welfare,* 497 F.2d 837, 841 (3 Cir.1974). It has been suggested by this Circuit that "when a claimant is not represented by counsel, the hearing officer may have a duty to take a more active role in obtaining the information necessary for a determination on the question of disability." *Gachette v. Weinberger,* 551 F.2d 39, 41 (3 Cir.1977), citing *Hess v. Secretary,* 497 F.2d 837 (3 Cir.1974).

> In such cases, (where the claimant is unassisted by counsel), a duty devolves upon the administrative law judge to, at a minimum, emphasize to the claimant the importance of providing all the relevant evidence. *Brittingham v. Weinberger,* 408 F.Supp. 606, 611 (1976), citing *Hess, supra* at 840, 841. (emphasis added).

> The administrative law judge is charged not just with determining the facts, but with developing them as well. See *Richardson v. Perales,* 402 U.S. 389, 410 [91 S.Ct. 1420, 1431–1432, 28 L.Ed.2d 842] (1971).

The court in *Gachette, supra* at 41 remanded stating: "[o]n remand, then, counsel for Gachette should be permitted to make an offer of proof regarding what a more fully developed record might have shown, and the district court should rule upon this contention." This Court is of the opinion that this case should be remanded to enable the plaintiff to submit medical and laboratory reports of his treating physician to the Secretary.

The plaintiff asserts that the ALJ did not properly evaluate his subjective complaints of pain. At the hearing, the plaintiff testified that he gets short-winded and has chest pains if he walks too far (tr. 32); that his back is very bad and it hurts a lot sometimes (tr. 34); for which he takes pain pills (tr. 35); that he stopped driving a truck because of chest pains (tr. 37), that he takes pain pills for his right arm which hurts

"from my elbow all up in my neck" and that he takes nitroglycerin for chest pains. (tr. 44). As to these complaints of pain, the ALJ stated nothing directly but did find that "there is no evidence showing that his back condition is disabling" (tr. 20) and "[a]fter evaluating claimant's testimony ... I find that there is a lack of credible evidence to substantiate claimant's disability allegations." (tr. 20).

■ Pain in itself may be a disabling condition. *Smith v. Harris,* 644 F.2d 985, 988 (3 Cir.1981); *Baerga v. Richardson,* 500 F.2d 309, 312 (3 Cir.1974), *cert. denied,* 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975). In considering the objective medical facts and expert medical opinions to determine the existence of pain, the ALJ "... must consider the claimant's subjective evidence of pain and disability ...." *Mode v. Celebrezze,* 359 F.2d 135, 136 (4 Cir.1966). While the ALJ is entitled to discredit the claimant's testimony as to pain, *Brittingham v. Weinberger, supra* at 613, he is required to state the facts upon which he bases his conclusion which must be both clear and reasonable. *Jones v. Harris,* 497 F.Supp. 161 (E.D.Pa.1980).

■ The ALJ in this case did not even address the plaintiff's subjective complaints of pain nor did he state the facts upon which he chose to ignore the plaintiff's complaints of pain. Fundamental fairness requires that this case be remanded so that the plaintiff's complaints of pain be properly evaluated.

The plaintiff urges that his medical condition has not improved from 1977–1978 to the period of 1980 and that his benefits were therefore improperly terminated. A recent case decided in this district states a standard of law to be applied in cases where benefits are terminated. In *Shaw v. Schweiker,* No. 81–4259, at 6 (E.D.Pa., February 4, 1982), it was stated by Judge VanArtsdalen that:

> Once a final determination of disability has been rendered, it is logically impossible for a claimant to become non-disabled without a change amounting to improvement (unless, of course, ..., new evi-

dence shows the original decision to be in error). After a final determination of disability, if a termination of benefits were effected without a showing either of improvement or newly-discovered evidence, such a termination would of necessity be based on whim or caprice or would constitute an impermissible relitigation of facts and determinations already finally decided.

 In this case, the ALJ stated that "[t]he medical evidence shows that claimant's impairments had improved in January 1980." (tr. 21). However, the ALJ does not give supportive statements of nor cite medical evidence which indicates that the plaintiff's condition has improved. As such, his decision is not supported by substantial evidence. Because the ALJ did not apply the correct standard of law in this case by requiring the Secretary to show current evidence of improvement or evidence that the plaintiff's condition was not as serious as it had been found to be in 1977, this case must therefore be remanded. The Secretary on remand shall determine if the government has shown a substantial change or improvement in the plaintiff's condition to warrant termination of benefits.

 Lastly, the plaintiff asserts that the ALJ should have obtained the testimony of a vocational expert. Under the Regulations as promulgated by the Secretary, a five step procedure is to be utilized to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a). These steps are as follows:

1. If the claimant is working and doing substantial gainful activity a finding of not disabled is directed. If not, proceed to step 2. 20 C.F.R. § 404.-1520(b).

2. If the claimant is found not to have a severe impairment which significantly limits his or her physical or mental ability to do basic work activity, a finding of not disabled is directed. If there is a severe impairment, proceed to step 3. 20 C.F.R. § 404.1520(c).

3. If the impairment meets or equals criteria for a listed impairment or impairments in Appendix 1, a finding

of disabled is directed. If not, proceed to step 4. 20 C.F.R. § 404.-1520(d).

4. If the claimant retains the residual functional capacity to perform past relevant work a finding of not disabled is directed. If it is determined that the claimant cannot do the kind of work he or she performed in the past, proceed to step 5. 20 C.F.R. § 404.1520(e).

5. The Secretary will then consider the claimant's residual functional capacity, age, education, and past work experience in conjunction with criteria listed in Appendix 2 to determine if the claimant is or is not disabled. 20 C.F.R. § 404.1520(f).

In this case, the ALJ proceeded to the fifth and final step and determined that given the claimant's residual functional capacity to perform sedentary work, his age, education and work experience and applying all these factors to Rule 201.24 in Appendix 2, a finding of not disabled was directed. (tr. 21). The plaintiff claims that using Appendix 2 in his case was inappropriate because his impairments are non-exertional in nature.

The regulations specifically state that "a conclusion of disabled or not disabled is not directed" if an individual's vocational profile is not precisely contained in Appendix 2. Appendix 2, § 200.00(d). The regulations also declare that Appendix 2 may not be fully applicable in a situation where a claimant suffers from *non-exertional;* instead of or in addition to exertional impairments. *Santise v. Schweiker,* 676 F.2d 925 at 934–935 (3 Cir.1982), citing 20 C.F.R. part 404, Appendix 2, § 200.00(e). In such situations, testimony from a vocational expert is necessary where the claimant possesses non-exertional problems. *Santise, supra* at 934–935, citing *Walker v. Harris,* 504 F.Supp. 806, 811 (D.Kan.1980).

The plaintiff here suffers exertional as well as non-exertional impairments including diabetes mellitus, pancreatitis, essential hypertension, and atypical pulmonary tu-

berculosis. Based on authorities cited in *Santise, supra,* the ALJ should have elicited testimony from a vocational expert rather than applying the "grid" under Appendix 2.

Accordingly, we make the following

## RECOMMENDATION

Now, this 8th day of June, 1982, it is respectfully recommended that the cross-motions for summary judgment be denied. It is further recommended that the case be remanded to the Secretary of Health and Human Services for further proceedings consistent with this Report and Recommendation.