Roseanne D. ALLSBURY, Plaintiff,

v.

Jo Anne B. BARNHART, Commissioner of Social Security Administration, Defendant.

Civil Action No. 1:05–CV–280.

United States District Court,
E.D. Texas.

July 13, 2006.

Steven S. Packard, Packard Packard & Lapray, Beaumont, TX, for Plaintiff.

James Alfred Garrett, Social Security Administration, Dallas, TX, for Defendant.

## MEMORANDUM OPINION ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

CRONE, District Judge.

The Court heretofore ordered that this matter be referred to the Honorable Earl S. Hines, United States Magistrate Judge, for consideration pursuant to applicable law and orders of this Court. The Court has received and considered the Report of the United States Magistrate Judge pursuant to such order, along with the record, pleadings and all available evidence. No objections to the Report of the United States Magistrate Judge were filed by the parties.

Accordingly, the findings of fact and conclusions of law of the United States Magistrate Judge are correct, and the Report of the United States Magistrate Judge is **ADOPTED**. A Final Judgment will be entered separately, remanding this action to the Commissioner for further consideration of plaintiff's capacity to perform alternative work in light of non-exertional impairments.

## *REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE*

HINES, United States Magistrate Judge.

This case is referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law. *See* 28 U.S.C. § 636(b)(1)(B) (2001) and Loc. R. CV–72 & App. B, R.1(H) for the Assignment of Duties to United States Magistrate Judges; *see also* Gen. Order 05–6.

## I. NATURE OF THE CASE

Plaintiff requests judicial review of the Commissioner of Social Security Administration's decision denying her application for disability insurance benefits. United States district courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405 (2003). The court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id.*

## II. PROCEEDINGS

Plaintiff claims disability due to *chronic depression, panic attacks, post-traumatic stress disorder, degenerative bone disease, arthritis, scoliosis,* and *alcoholism.* Following initial administrative denial of her claim, plaintiff requested a hearing before an administrative law judge (ALJ) (Tr. 66). ALJ Harry L. Williams convened an evidentiary hearing. Plaintiff was represented by an attorney, Jonathan Healy, Esq.

ALJ Williams received direct testimony from plaintiff and her husband. The remaining evidentiary record consisted of medical reports from treating sources, and "residual functional capacity assessments" completed by medical consultants who reviewed plaintiff's medical records upon request of Texas Department of Disability Determinations.[1] A vocational expert, Dr. Norman Hooge, was present at the hear-

---

1. Dr. M.A. Wharton, Psy. D. (Tr. 194) and Dr. B. Rock Oh, M.D. (Tr. 212). "A medical consultant is a person who is a member of a team that makes disability determinations in a State agency, as explained in § 404.1615, or who is a member of a team that makes disability determinations for us when we make disability determinations ourselves." 20 C.F.R. § 404.1616(a) (2005).

ing (Tr. 32), but for unstated reasons, ALJ Williams elicited no testimony from him.

## III. ADMINISTRATIVE DECISION

### A. Sequential Evaluation Process

The Commissioner utilizes a five-step, burden-shifting analysis to determine when claimants are disabled. When a claimant is found disabled—or not—at an early step, remaining steps are not considered. 20 C.F.R. § 404.1520 (2005). This procedure is a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert,* 482 U.S. 137, 153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell,* 461 U.S. 458, 461, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

The burden of proof rests on a claimant through Step 4. *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir.2002); *Chaparro v. Bowen,* 815 F.2d 1008, 1010 (5th Cir. 1987). Essentially, those steps require a claimant to prove that one or more impairments are sufficiently severe as to presumptively disable (Step 3) or prevent performance of past relevant work (Step 4). When a claimant carries the Step 4 burden, the proof establishes a *prima facie* case of qualifying disability. The burden then shifts to the Commissioner—at Step 5—to show that plaintiff can still perform other available work. *Chaparro,* 815 F.2d at 1010.

### B. Findings and Conclusions

Employing the sequential procedure just described, ALJ Williams found that plaintiff is not working (Step 1); has severe impairments,(Step 2); and that these impairments prevent plaintiff from performing her past relevant work (Step 4). Tr.

28, Finding 8. These findings established plaintiff's *prima facie* case, and mandated a fifth-step analysis as to whether plaintiff can perform alternative, available work.

Utilizing "Medical–Vocational Guidelines"[2] as a "framework" for his decision, ALJ Williams determined that plaintiff "retains the capacity for work that exists in significant numbers in the national economy." Tr. 27. This determination compelled him to decide that plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of the decision." Tr. 28, Finding 14.

## IV. POINTS OF ERROR

Plaintiff proffers three points of error which attack ALJ Williams's predicate residual functional capacity finding and his ultimate Step 5 finding that plaintiff can perform alternative available work. Plaintiff's third point is dispositive. That point, *verbatim,* is:

> "The ALJ overstepped his role ... when he determined, without expert testimony, that the Plaintiff was not disabled at step 5 of the sequential evaluation process."

Pl.'s Br. at p. 1. As *phrased,* this point suggests that ALJ Williams did not apply correct principles of law. As actually *argued,* plaintiff contends that ALJ Williams's Step 5 decision lacks substantial evidentiary support. Specifically, plaintiff argues that Medical–Vocational Guidelines alone cannot in plaintiff's case satisfy the Commissioner's evidentiary burden at Step 5.

The Commissioner responds only with boilerplate asserting that ALJ Williams properly determined that plaintiff "retain[s] the residual functional capacity for a wide range of light work" and that his determination is supported by medical evidence of record. Deft's Br. at p. 13.

---

**2.** See Sec. V., *infra,* for discussion of Medical–Vocational Guidelines.

## V. DISCUSSION AND ANALYSIS

When the Commissioner decides at Step 5 that an applicant can perform available, alternative employment, that decision must be supported by substantial evidence. Typically, the Commissioner satisfies that burden in two ways. First, the Commissioner often receives testimony from a "vocational expert"[3] or considers similar "vocational resource" evidence.[4] Second, the Commissioner can take administrative notice of availability of alternative work by consulting predetermined findings contained in "Medical Vocational Guidelines," commonly called "the grids."[5] The grids are a matrix of general findings which take into account age, education, work experience, and residual functional capacity. When individual factors for a particular applicant are compared to the general findings in the grids, the Commissioner determines whether alternative work that the particular applicant can perform exists in the national economy. 20 C.F.R. § 404.1569a(b) (2005). If the grids pro-

duce a finding that substantial jobs are not available, the application for benefits is approved. Conversely, if the grids produce a finding that such jobs are available, the application is denied.

## A. Limitations Of The Grids

■ The grids establish whether there are available jobs in the national economy for claimants with *exertional* impairments.[6] They do not establish jobs that exist in the national economy at various functional levels for claimants with solely *nonexertional* impairments.[7] 20 C.F.R. § 404.1569a(c)(2); 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(1) (2005). See also *Sykes v. Apfel,* 228 F.3d 259, 269 (3d Cir.2000). Consequently, *when an ALJ determines that a claimant suffers from a nonexertional impairment that prevents performance of the claimant's past work, the Commissioner generally must produce "expert vocational testimony or other similar evidence" to establish that jobs exist in the national economy that the applicant can perform. See Lawl-*

3. Vocational Experts are utilized by the ALJ to "assess whether jobs exist for a person with the claimant's precise abilities." *Gilliam v. Califano,* 620 F.2d 691, 694 n. 1 (8th Cir.1980).

4. Vocational resources may be vocational consultants or specialists, vocational evaluation workshops, or vocational experts who testify at the administrative hearing and Appeals Council levels. Soc. Sec. R. 83–14 (1983), 1983 WL 31254, at *4.

5. The Medical–Vocational Guidelines consist of three tables (for sedentary, light, and medium work) which may be consulted once a claimant's residual functional capacity is determined. The tables direct conclusions of disability or non-disability based upon claimant's age, education, and previous work experience. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201–03 (2005).

6. "Exertional" refers to an individual's limitations and restrictions of physical strength and

defines the individual's remaining ability to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling. An exertional limitation is "an impairment-caused limitation of any one of these activities." Social Security 96–9P, 1996. *See also* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e) (2005).

7. "Nonexertional" refers to work-related limitations and restrictions that are not exertional, such as mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling. Environmental restrictions are also considered to be nonexertional. Social Security Ruling 96–9P (1996), 1996 WL 374185, at *5. *See also* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e) (2005) (Nonexertional impairments are those which do "not result in [strength] limitations, e.g. certain mental, sensory, or skin impairments. In addition, some impairments may result solely in postural and manipulative limitations or environmental limitations.").

er v. Heckler, 761 F.2d 195, 198 (5th Cir. 1985); Dellolio v. Heckler, 705 F.2d 123, 127–28 (5th Cir.1983).

 There are exceptions. First, even when a claimant has a nonexertional impairment, the Commissioner may nevertheless rely exclusively on the grids when the ALJ determines that the nonexertional impairment does not *significantly affect* the claimant's residual functional capacity. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir.2000), citing *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir.1987). Second, even when residual functional capacity *is* significantly affected by a nonexertional impairment, the Commissioner's regulation permits an administrative law judge to consult the grids as a *framework* for considering "how much the individual's work capability is further diminished ... by the nonexertional limitations." 20 C.F.R. pt. 404, subpt. P, app.2, § 200.00(e)(2)(2005).

## B. The "Framework" Exception

Unfortunately, the Commissioner's regulation gives no explanation as to how the grids provide a framework for decisionmaking. A ready answer is neither self-evident nor intuitive. The grids—limited by definition to administrative findings for persons suffering from *exertional* impairments—do not naturally or logically illuminate the separate inquiry concerning scope of disabling effects of *nonexertional* impairments.

Noting this disconnect early on, Professor Capowski observed that the Commissioner's regulations *"provide little guidance, however, on how to apply this*

framework in deciding cases."* John J. Capowski, *Accuracy and Consistency in Categorical Decision–Making: A Study of Social Security's Medical–Vocational Guidelines—Two Birds with One Stone or Pigeon–Holing Claimants?*, 42 MD. L. REV. 329, 342 (1983). Professor Capowski specifically mentioned mental impairments as an example of a nonexertional limitation for which the grids most likely could not serve as a framework of reference. *Id.* at 351. He predicted:

> If nonexertional impairments and the framework concept are taken seriously, given the number of situations in which the "grid" is to be used as a framework rather than conclusively, the exceptions to the rule may outnumber the situations in which the categorical rule itself applies.

*Id.* at 360. Professor Capowski also suggested that logical extension of the framework concept would mean that vocational experts would be unlikely to be called to testify at administrative hearings. And, since the grids provide little or no guidance on how the framework concept can be used in individual cases, *ALJs would be involved in vocational judgments they are completely unqualified to make. Id.* at 363.

The Commissioner—perhaps recognizing this confusion and dissatisfaction—attempted to bolster the regulation through a series of interpretive rulings.[8] Relevant to circumstances here, the Commissioner issued Social Security Ruling 83–14 to clarify use of Grid rules as a framework for disability determinations involving claimants with both exertional and nonexertion-

---

**8.** Social Security Ruling 83–12 (1983), 1983 WL 31253 ("Capability to Do Other Work—The Medical–Vocational Rules as a Framework for Evaluating Exertional Limitations Within a Range of Work or Between Ranges of Work"); Social Security Ruling 83–14 (1983), 1983 WL 31254 ("Capability to Do Other Work—The Medical–Vocational Rules

as a Framework for Evaluating a Combination of Exertional and Nonexertional Impairments"); Social Security Ruling 85–15 (1985), 1985 WL 56857 ("Capability to Do Other Work—The Medical–Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments").

al impairments. Essentially, the Ruling directs adjudicators to first ascertain whether the grids direct a finding of disability based on the claimant's strength (exertional) limitations alone. If so, the claimant's eligibility would be established. Soc. Sec. R. 83–14 (1983), 1983 WL 31254, at *3. If not, the adjudicator should:

- consider requirements of jobs which the claimant might perform with the strength limitations,
- determine whether the claimaint's nonexertional limitations affect performance of those jobs, and if so,
- determine to what extent the available "occupational base" is eroded by the nonexertional limitations.

*Id.*, at *6.

For the latter determination, the Ruling directs adjudicators to take administrative notice of job information in "publications listed in sections 404.1566 and 416.966 of the regulations"[9] for "simple issues." *Id.*, at *4. When more complex issues are involved, the adjudicator may enlist "the assistance of a vocational resource."[10] *Id.* The Ruling provides a step-by-step analytical template.[11] Finally, the Ruling requires that in all decisions, "[t]here must be findings of fact and recitation of the evidence which supports each finding." *Id.*, at *6.

In *theory*, the Commissioner's interpretation and intended procedures appear rational, plausible, practical, and without obvious constitutional flaws.[12] In *application*, however, the "framework" exception often is bastardized to the point that consulting the grids as a "framework" is

---

9. The Commissioner takes "administrative notice of reliable job information" provided in the following publications:

"(1) *Dictionary of Occupational Titles,* published by the Department of Labor;

(2) *County Business Patterns,* published by the Bureau of the Census;

(3) *Census Reports,* also published by the Bureau of the Census;

(4) *Occupational Outlook Handbook,* published by the Bureau of Labor Statistics;

(5) *Use of vocational experts and other specialists."*
20 C.F.R. §§ 404.1566(d), 416.966(d) (2005).

10. See n. 4, *supra.*

11. "In reaching judgments as to the sufficiency of the remaining exertional job base ... there are three possible situations to consider:

1. Where it is clear that the additional limitation or restriction has very little effect on the exertional occupational base, the conclusion directed by the appropriate rule in Tables No. 1, 2, or 3 would not be affected.

2. Where it is clear that additional limitations or restrictions have significantly eroded the exertional job base set by the exertional limitations alone, the remain-

ing portion of the job base will guide the decision.

3. Where the adjudicator does not have a clear understanding of the effects of additional limitations on the job base, the services of a VS will be necessary."
*Id.* at *6.

12. The Commissioner's intended "framework" analysis contemplates that adjudicators enlist services of a vocational source, such as a vocational expert, when necessary to understand effects of additional nonexertional limitations on the job base that would exist if only strength limitations were considered. *See* n. 12, *supra.* When administrative adjudicators avail themselves of that option, courts generally find no reversible error in their use of the grids as a framework for decision making. *See Wright v. Massanari,* 321 F.3d 611, 616 (6th Cir.2003); *Wilson v. Barnhart,* 284 F.3d 1219, 1227 (11th Cir. 2002); *Brown v. Barnhart,* 372 F.Supp.2d 957, 975 (S.D.Tex. Mar.23, 2005); *Fosha v. Barnhart,* 372 F.Supp.2d 948, 956 (S.D.Tex. Mar.18, 2005); *McDonald v. Barnhart,* 2006 WL 758484 (8th Cir.2006), at *1; *Mullens v. Barnhart,* 2006 WL 235190 (10th Cir.2006), at *3; *Gardner v. Barnhart,* 2005 WL 3588454, at *2 (5th Cir.2005) ; *Moore v. Social Security Admin.,* 153 Fed.Appx. 945 (5th Cir.2005).

nothing more than a codeword for direct application of the grids. In those instances, the Commissioner's "framework" regulation was challenged often and successfully in courts. *See Fenton v. Apfel,* 149 F.3d 907 (8th Cir.1998); *Swindle v. Sullivan,* 914 F.2d 222 (11th Cir.1990); *Abbott v. Sullivan,* 905 F.2d 918 (6th Cir. 1990); *Ortiz v. Secretary of Health and Human Services,* 890 F.2d 520 (1st Cir. 1989); *Coffman v. Bowen,* 829 F.2d 514 (4th Cir.1987); *Smith v. Bowen,* 826 F.2d 1120 (D.C.Cir.1987); *Bapp v. Bowen,* 802 F.2d 601 (2nd Cir.1986); *Warmoth v. Bowen,* 798 F.2d 1109 (7th Cir.1986); *Francis v. Heckler,* 749 F.2d 1562 (1985).

The Third Circuit, in an opinion authored by Chief Judge Becker, stated categorically that the framework concept—when applied so broadly as to constitute direct application of the grids—does not comport with the spirit of *Heckler v. Campbell,* 461 U.S. at 468, 103 S.Ct. 1952, which upheld use of the grids as part of individualized determination required in every case by constitutional Due Process. Thus, the Third Circuit requires additional vocational evidence establishing the extent to which a claimant's residual functional capacity is diminished by a nonexertional impairment:

> *Upon reflection, we cast our lot with those courts of appeals that require the testimony of a vocational expert or other similar evidence, such as a learned treatise. In the absence of evidence in* **addition to the guidelines [grids]** *..., the Commissioner cannot establish that there are jobs in the national economy*

*that someone with the claimant's combination of impairments can perform.*[13] *Sykes,* 228 F.3d at 273, emphasis added. *See also, Wilson v. Commissioner,* 378 F.3d 541, 548 (6th Cir.2004) ("[I]f a claimant suffers from a limitation not accounted for by the grid, the Commissioner may use the grid as a framework for her decision, but must rely on other evidence to carry her burden. . . . [such as] the testimony of a vocational expert").

The Fifth Circuit has not weighed in specifically on whether, when, or how the framework concept is acceptable as an exclusive basis for decision making. However, the Fifth Circuit clearly leans toward the Third Circuit's approach. In a case involving a claimant's inability to sit or stand for prolonged periods due to subjectively disabling pain, an administrative law judge—purporting to apply the grids as a framework—determined that the claimant could perform numerous unskilled light and sedentary jobs available in the national economy. The Fifth Circuit remanded, holding that *once the Commissioner accepted the claimant's assertions regarding her inability to sit or stand for prolonged periods, her fact situation no longer matched the assumptions of the grids. Lawler,* 761 F.2d at 198. The Fifth Circuit declared that upon remand, the Commissioner should receive and rely upon *expert vocational testimony or similar evidence. Id. See also Fields v. Bowen,* 805 F.2d 1168, 1170 (5th Cir.1986) (application of Grid rules inappropriate when claimant suffers solely nonexertional impairment). Moreover, at least one district court within

---

**13.** Subsequently, the Commissioner issued a formal Acquiescence Ruling instructing all persons at all levels who consider disability applications within the Third Circuit to not use the grids exclusively as a framework for decision making when a claimant has a nonexertional limitation. See Social Security Acquiescence Ruling 01–1(3), 2001 WL 65745.

While the ruling is limited to cases within the Third Circuit, it forecasts a potential general revision to the framework concept:

> *We are considering revising our rules regarding our use of the grid rules as a framework for decisionmaking and may rescind this Ruling once we have made the revision. Id.*

the Fifth Circuit regularly applies the Third Circuit rule.[14]

■ This court grappled with the framework issue on two prior occasions. In *Nobles v. Commissioner of Social Security Administration,* No. 9:00–CV–128, 2002 WL 553735, at *9 (E.D.Tex. Apr.10, 2002), the court held that at a minimum, an administrative law judge must articulate credible and plausible reasons supporting a conclusion that the grids provide a reliable framework for determining the extent to which nonexertional impairments affect any given claimant's ability to perform specific jobs existing in national economy. The court reasoned:

> *Unexplained reference to and use of the grids as a framework is functionally the same as using regulatory "magic words" to bolster an assertion that may in truth be completely unsupported and nothing more than ipse dixit.*

*Id.,* at *9. In *Thompson v. Commissioner,* No. 1:00–CV–656, 2002 WL 31098511 (E.D.Tex. July 30, 2002), the court surveyed existing jurisprudence and observed that courts *"exhibit a healthy skepticism of an ALJ's use of the grids as a framework"* when there is no discernible difference between using the grids as a framework and applying them directly *Id.,* at *5. The court, however, upheld the Commissioner's decision, notwithstanding the ALJ's unexplained reference to the grids as a framework, because a vocational expert testified in the case, and the expert's *testimony* supported the Step 5 decision. Thus, the "framework" language in the administrative decision was surplusage that did not invalidate the ultimate finding. *Id.,* at *6.

## C. Application

ALJ Williams found that plaintiff has six "impairments."[15] In combination, those impairments are of sufficient magnitude that ALJ Williams classified them as "severe," (Tr. 23) meaning that they limit significantly plaintiff's ability to do basic work activities.[16] Of these, four are nonexertional, *viz.,* anxiety, panic attacks,[17] hypertension[18] and fibromyalgia.[19]

Despite attendance of a vocational expert at the hearing, ALJ Williams curiously declined to request expert testimony as

**14.** *See Bolton v. Callahan,* 984 F.Supp. 510, 514 (N.D.Tex. Sept.19, 1997) and *Frazier v. Chater,* 903 F.Supp. 1030, 1034–35 (N.D.Tex. Sept.13, 1995) (both stating "if the Plaintiff suffers from nonexertional or a combination of exertional and nonexertional impairment, the Secretary may not utilize the Medical Vocational Guidelines for a decision.... When the Guidelines may not be utilized for decision making, then the Secretary may only sustain her burden of proof by producing expert vocational testimony ....").

**15.** Social Security benefits based on disability are awarded only for "impairments" that render a person unable to engage in any substantial gainful activity for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An impairment is an abnormality that *can* be shown by medically acceptable clinical and laboratory diagnostic techniques, and, in fact, *must* be established by medical evidence, as opposed to the claim-

ant's subjective statement or symptoms. 20 C.F.R. § 404.1508 (2005). The severe impairments found in plaintiff's case are *anxiety, panic attacks, high blood pressure, scoliosis, osteoarthritis, and fibromyalgia* Tr. 23.

**16.** *See* 20 C.F.R. § 404.1520(c); *Barnhart v. Thomas,* 540 U.S. 20, 24, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003).

**17.** Mental impairments, such as plaintiff's severe anxiety and panic attacks, are nonexertional impairments. *See* Soc. Sec. R. 96–9P (1996), 1996 WL 374185, at *5.

**18.** *See Singleton v. Schweiker,* 551 F.Supp. 715, 723 (E.D.Pa.1982) (characterizing hypertension as a nonexertional impairment).

**19.** *See Phillips v. Barnhart,* 357 F.3d 1232, 1243 (11th Cir.2004) (characterizing fibromyalgia as a nonexertional impairment).

to the availability of alternative work for a person suffering from those nonexertional impairments. He did not produce any similar evidence to that effect. Rather, he simply consulted the grids and determined that:

> [A]"finding of 'not disabled' is supported by Medical–Vocational Rule 201.27 and 201.28."

Tr. 27; Tr. 28, Finding 13.[20]

This decision is problematic. When ALJ Williams determined that plaintiff has nonexertional impairments which, in combination, are severe, her fact situation no longer matched assumptions of the grids. *Lawler v. Heckler* generally requires expert vocational testimony or similar evidence to support the finding that plaintiff can perform alternative available work. ALJ William produced no such testimony or evidence.

■The decision, therefore, must be reversed unless one of the two exceptions mentioned earlier applies. ALJ Williams expressly relied on the "framework" exception. However, ALJ Williams articulated no basis for how the grids provide a framework for the decision. He did not follow the analytical protocol or provide findings of fact and recitation of the evidence supporting the findings required by SSR 83–14. In that vacuum, the court must conclude that ALJ Williams looked to the grids to accomplish indirectly what he could not do directly. His reference to the grids as a framework was in effect " 'magic words' to bolster an assertion that may in truth be completely unsupported and nothing more than *ipse dixit* " as foreshadowed in *Nobles*. The grids themselves do not, without more, constitute substantial evidence supporting the finding that plaintiff can perform alternative available work.

■ The remaining exception permits direct application of the grids when nonexertional impairments do not significantly affect the claimant's residual functional capacity. That exception does not apply here for several reasons. First, ALJ Williams made no such finding. Second, it would have been internally inconsistent for him to have made such a finding. He found plaintiff's nonexertional impairments, in combination, to be "severe" which, by definition, means that they significantly limit plaintiff's ability to do basic work activities.[21] Third, as discussed in the remaining portion of this report, any such finding, had it been made, would not have been supported by substantial evidence.

ALJ Williams determined that plaintiff's "mental impairments are not severe by themselves but only in combination with her other impairments." Tr. 25. Further, when discussing these impairments (anxiety, panic attacks), ALJ Williams concluded that they produce in plaintiff only *mild* limitations in activities of daily living, maintaining social functioning, and concentration. Tr. 23. Under a strained construction, the court might construe these statements as intending to articulate a finding that plaintiff's mental and other nonexertional impairments do not significantly affect her residual functional capacity.

■ If so, such a finding would not be supported by substantial evidence. The statement that plaintiff's mental impairments produce only mild limitations conflicts directly with uncontradicted professional opinions of consulting psychologist Ray Coxe, Ph.D., and M.A. Wharton, Psy. D., who reviewed plaintiff's record upon request of state department of disability

---

**20.** These grid rules apply to sedentary work. Tr. 27; See 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201.27, 201.28 (2005).

**21.** *See* n. 13, *supra*.

determinations. Both opined that plaintiff's mental impairments produce *moderate* limitations.[22]

There is more than a semantic difference between the terms "mild" and "moderate." Mental impairments are evaluated according to a five-point scale: "none, mild, moderate, marked, and extreme." *See* 20 C.F.R. § 404.1520a(c)(4) (2005). The first two points on the scale, i.e. "none" and "mild" do not indicate a severe impairment. *Id.* The last point on the scale, i.e., "extreme" represents a degree of limitation presumptively incompatible with ability to do any gainful activity. *Id.* The middle point, "moderate", while not presumptively disabling, nevertheless represents a severe impairment. *Id.*

Under the applicable regulation, a moderate mental impairment is deemed "severe." A severe impairment is one that "significantly limits [the individual's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c) (2005). Accordingly, ALJ Williams could not have found that plaintiff's nonexertional mental impairments do not significantly affect her residual functional capacity.

█ In summary, plaintiff established a *prima facie* case of disability that qualified her for benefits. Her application should have been granted unless the Commissioner proved that plaintiff's residual functional capacity permits her to perform alternative, available work. The Medical–Vocational Guidelines (grids) generally do not constitute substantial evidence of that fact when, as here, the claimant suffers from nonexertional impairments. Neither of the recognized exceptions to this general rule apply in this case for the reasons discussed above. There being no other expert vocational testimony or similar evidence supporting the Commissioner's Step 5 determination (that plaintiff can perform alternative available work), the court must conclude that the decision is not supported by substantial evidence.

## VII. RECOMMENDATION

The Commissioner's decision should be reversed and this case remanded for reconsideration. If the Commissioner again denies plaintiff's application at Step 5, the Commissioner should be instructed to obtain expert vocational or similar evidence regarding plaintiff's ability to perform alternative available work *or* to provide a reasoned statement as to how Medical–Vocational Guidelines (the grids) provide a framework for decisionmaking.

---

22. Dr. Coxe diagnosed plaintiff with anxiety disorder and rated her global assessment of functioning (GAF) at 55, which indicates *"moderate symptoms* (e.g. flat affect and circumstantial speech, occasional panic attacks) OR *moderate difficulty* in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers)." American Psychiatric Association, *Diagnostic and Statistical Manual, Fourth Ed., 1994, available at* http://www.psych.org/apire/fehb2000/help/ GAF_scale. cfm (emphasis added).

M.A. Wharton, Psy. D., reviewed plaintiff's record upon request of state department of disability determinations. Like Dr. Coxe, Dr. Wharton opined that plaintiff has *moderate* limitations, specifically regarding:

- ability to understand and remember detailed instructions,
- ability to carry out detailed instructions,
- ability to maintain attention and concentration for extended periods,
- ability to work in coordination with or proximity to others without being distracted by them,
- ability to interact appropriately with the public, and
- ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

Tr. 194–195. Dr. Wharton also found that plaintiff has *moderate* limitations in performing activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace. Tr. 208.

## VIII. Objections

Objections must be: (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 1(a), 6(b), and 72(b).

A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir.1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, *Douglass v. United Servs. Auto. Ass'n.*, 79 F.3d 1415, 1417 (5th Cir.1996) (en banc).